**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| GESTURE TECHNOLOGY PARTNERS, LLC, | **JURY TRIAL DEMANDED** |
| Plaintiff | |
| v. | C.A. NO. 6:21-cv-00121-ADA |
| APPLE INC. | |
| Defendant. | |
| GESTURE TECHNOLOGY PARTNERS, LLC, | **JURY TRIAL DEMANDED** |
| Plaintiff | |
| v. | C.A. NO. 6:21-cv-00122-ADA |
| LENOVO GROUP LTD., LENOVO (UNITED STATES) INC., and MOTOROLA MOBILITY LLC, | |
| Defendants. | |

**PLAINTIFF GESTURE TECHNOLOGY PARTNERS, LLC'S**
**OPENING CLAIM CONSTRUCTION BRIEF**

**TABLE OF CONTENTS**

I.     INTRODUCTION ............................................................................................ 1

II.    ASSERTED PATENTS ................................................................................... 1

       A.    The '431 Patent .................................................................................... 2

       B.    The '924 Patent .................................................................................... 2

       C.    The '079 Patent .................................................................................... 3

       D.    The '949 Patent .................................................................................... 3

III.   LEGAL STANDARD ..................................................................................... 4

IV.    CLAIM CONSTRUCTION ARGUMENTS ................................................... 4

       1.    "adapted to" ........................................................................................ 4

       2.    "at least one of … and …" ................................................................. 5

       3.    "a computer implemented method" / "a computer apparatus" ............ 7

       4.    "computer means within said housing for analyzing said image to determine
             information concerning a position or movement of said object" .......... 8

             a.    The term "computer" connotes sufficient structure for the recited
                   function. ................................................................................... 9

             b.    Alternatively, Defendants' recited function is improper, and their
                   proposed corresponding structure includes structure that is not
                   necessary to perform the recited function. ............................... 10

                   i.    Defendants attempt to inject additional limitations into the
                         claim language by expanding the recited function. ........... 11

                   ii.   Defendants' proposed structure is neither clearly linked to nor
                         necessary to perform the recited function. ........................ 12

       5.    "means for controlling a function of said apparatus using said information" ........ 13

             a.    Defendants' recited function is improper. ................................ 14

             b.    The "means for controlling" term is not indefinite. ................. 14

       6.    "oriented to view [a user / an object other than the user]" ................ 16

             a.    "oriented to view a user" ........................................................ 17

             b.    "oriented to view an object other than the user" ..................... 19

       7.    "the detected gesture is identified by the processing unit apart from a plurality
             of gestures" ....................................................................................... 19

       8.    "forward facing [portion / light source]" ......................................... 20

             a.    "forward facing portion" ........................................................ 20

             b.    "forward facing light source" ................................................. 21

# TABLE OF AUTHORITIES

**Cases**

*3rd Eye Surveillance, LLC v. United States*,
  140 Fed. Cl. 39, 70 (2018) ................................................................................................. 7

*Ancora Techs., Inc. v. LG Elecs., Inc.*,
  No. 1-20-CV-00034-ADA, 2020 U.S. Dist. LEXIS 150002 (W.D. Tex. Aug. 19, 2020) ........ 10

*CryptoPeak Sols., LLC v. Lowe's Home Ctrs.*,
  No. 2:15-cv-1737-RWS-RSP, 2016 U.S. Dist. LEXIS 135666 (E.D. Tex. Sep. 9, 2016) ........ 17

*Ergo Licensing, LLC v. CareFusion 303, Inc.*,
  673 F.3d 1361 (Fed. Cir. 2012) ......................................................................................... 12

*Gesture Tech. Partners, LLC v. Huawei Device Co. et al*,
  No. 2:21-CV-40-JRG, (E.D. Tex. Oct. 12, 2021) ............................................................ passim

*Grantley Patent Holdings, Ltd. v. Clear Channel Communs., Inc.*,
  Civil Action No. 9:06CV259, 2008 U.S. Dist. LEXIS 1588 (E.D. Tex. Jan. 8, 2008) ............. 11

*In re Katz Interactive Call Processing Patent Litig.*,
  639 F.3d 1303 (Fed. Cir. 2011) .................................................................................... 12, 17

*Intel Corp. v. VIA Techs.*,
  319 F.3d 1357 (Fed. Cir. 2003) ............................................................................ 16, 21, 22

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.*,
  430 F.3d 1377 (Fed. Cir. 2005) .................................................................................... 16, 18

*Iridescent Networks, Inc. v. AT&T Mobility, LLC*,
  2017 U.S. Dist. LEXIS 111107 (E.D. Tex. July 18, 2017) ...................................................... 6

*Masco Corp. v. United States*,
  303 F.3d 1316 (Fed. Cir. 2002) ......................................................................................... 10

*Micro Chemical, Inc. v. Great Plains Chemical Co.*,
  194 F.3d 1250 (Fed Cir. 1999) .................................................................................... 13, 14

*Motion Games, LLC v. Nintendo Co.*,
  No. 6:12-cv-878-JDL, 2015 U.S. Dist. LEXIS 180229 (E.D. Tex. Jan. 16, 2015) .................. 17

*Nautilus, Inc. v. Biosig Instruments*,
  572 U.S. 898 (2014). .................................................................................................... 18, 20

*NFC Tech., LLC v. Samsung Elecs. Co.*,
    2016 U.S. Dist. LEXIS 56777 (E.D. Tex. April 28, 2016) ....................................................... 6

*Omega Eng'g, Inc. v. Raytek Corp.*,
    334 F.3d 1314 (Fed. Cir. 2003) ................................................................................................. 5

*Optimum Imaging Techs. LLC v. Canon Inc.*,
    No. 2:19-CV-00246-JRG, 2020 U.S. Dist. LEXIS 102126 (E.D. Tex. June 11, 2020)........... 17

*Orion IP, LLC v. Staples, Inc.*,
    406 F. Supp. 2d 717 (E.D. Tex. December 15, 2005) ................................................................. 6

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ........................................................................................... 4, 11

*Profectus Tech. LLC v. Huawei Techs. Co., Ltd.*,
    No. 6:11-cv-474, 2014 U.S. Dist. LEXIS 53157 (E.D. Tex. Apr. 16, 2014) ............................ 5

*Samsung Elecs. Am., Inc. v. Prisua Eng'g Corp.*,
    948 F.3d 1342 (Fed. Cir. 2020) ............................................................................................... 10

*Sandisk Corp. v. Memorex Prods.*,
    415 F.3d 1278 (Fed. Cir. 2005) ................................................................................................. 7

*Smartphone Techs. LLC v. Research in Motion Corp.*,
    No. 6:10cv74 LED-JDL, 2012 U.S. Dist. LEXIS 108370 (E.D. Tex. Aug. 2, 2012)......... 17, 18

*Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*,
    844 F.3d 1370 (Fed. Cir. 2017) ............................................................................................... 17

*Telcordia Techs., Inc. v. Cisco Sys.*,
    612 F.3d 1365 (Fed. Cir. 2010) ............................................................................................... 16

*Thorner v. Sony Comput. Entm't Am. LLC*,
    669 F.3d 1362 (Fed. Cir. 2012) ................................................................................................. 7

*U.S. Ethernet Innovations, LLC v. Ricoh Ams. Corp.*,
    No. 6:12-cv-00235-MHS-JDL, 2013 U.S. Dist. LEXIS 117421 ......................................... 6, 14

*U.S. Surgical Corp. v. Ethicon, Inc.*,
    103 F.3d 1554 (Fed. Cir. 1997) ................................................................................................. 6

*Williamson v. Citrix Online, LLC*,
    792 F.3d 1339 (Fed. Cir. 2015) ............................................................................................... 10

### Statutes

35 U.S.C. §112 ................................................................................................................... 9, 10, 14

## I.   INTRODUCTION

Plaintiff Gesture Technology Partners, LLC ("GTP") files this opening claim construction brief noting that most of these terms have been previously construed—adopting GTP's proposed constructions—in *Gesture Tech. Partners, LLC v. Huawei Device Co. et al,* No. 2:21-CV-40-JRG, (E.D. Tex. Oct. 12, 2021) (Gilstrap, J.) (lead case).

Over 20 years ago, Dr. Pryor developed gesture-based technology that has become fundamental in mobile phones and tablets today.  Because Dr. Pryor's inventions are fundamental, the language of the claims of the Asserted Patents recites well-understood, commonly used terms.  To combat this, Defendants, like their unsuccessful predecessors in the Eastern District, adopted two tactics.  First, they try to depart from the plain and ordinary meaning of the terms and import unclaimed—and in many cases undisclosed—limitations into the claims.  But Defendants fail to identify <u>any</u> instance in which Dr. Pryor or GTP expressly relinquished claim scope to necessitate any departure from the plain and ordinary meaning.   Second, they argue, without any valid basis, that the claims are indefinite.  Accordingly, GTP respectfully submits that the Court should reject Defendants' proposed constructions and construe these terms according to their plain and ordinary meaning.

## II.   ASSERTED PATENTS

The Asserted Patents[1] are generally directed to innovations in using mobile-device cameras to assist a user to interact with their device, for example including, but not limited to, unlocking the device, taking and using photos or videos, and providing other functions.

---

[1] "Asserted Patents" means U.S. Patent Nos. 7,933,431 (the "'431 Patent") (attached as Ex. A), 8,194,924 (the "'924 Patent") (attached as Ex. B), 8,553,079 (the "'079 Patent") (attached as Ex. C), and 8,878,949 (the "'949 Patent") (attached as Ex. D).

The patents identify many benefits of using cameras and sensors to conveniently control computers and handheld devices.

### A.    The '431 Patent

The '431 Patent, entitled "Camera Based Sensing In Handheld, Mobile, Gaming, Or Other Devices," claims priority to U.S. Provisional Application No. 60/142,777 filed on July 8, 1999. *See* Ex. A.  The '431 Patent is directed towards methods and apparatuses "to enable rapid TV camera and computer-based sensing in many practical applications, including, but not limited to, handheld devices, cars, and video games."  Ex. A. at Abstract. In some embodiments, the patent describes the use of computer devices and one or more cameras that "optically sens[e] human input" with applications in a "variety of fields such as computing, gaming, medicine, and education."  Ex. A. at 2:7-17.

In some embodiments, the '431 Patent discloses a handheld device, such as a cell phone, that processes imaging from a person or object to control functions on the handheld device. '  Ex. A. at 11:62:-67.  The '431 Patent describes that the handheld device can "perform a control function by determining [] position, orientation, pointing direction or other variable with respect to one or more external objects, using an optical sensing apparatus . . . or with a camera located in the handheld device, to sense datums or other information external for example to the device."  Ex. A. at 12:1-9.  The '431 Patent describes that the device is able to "acquire features of an object and use it to determine something" such as object recognition.  Ex. A. at 13:5-21.

### B.    The '924 Patent

The '924 Patent, entitled "Camera Based Sensing in Handheld, Mobile, Gaming, or Other Devices," claims priority to U.S. Provisional Application No. 60/142,777 filed on

July 8, 1999.  *See* Ex. B.  The '924 Patent is a continuation of U.S. Patent Application No. 12/834,281, which issued as the '431 Patent.  *See id*.  The '924 Patent shares the same specification as the '431 Patent.

### C.   The '079 Patent

The '079 Patent is entitled "More Useful Man Machine Interfaces and Applications," and claims priority to U.S. Patent Application No.  60/107,652, filed on November 9, 1998.  *See* Ex. C.  The '079 Patent is directed towards a method for "determining a gesture illuminated by a light source utilizes the light source to provide illumination through a work volume above the light source."  Ex. C at Abstract.  The '079 Patent generally describes computer input devices in combination with at least one camera and a light source to observe points on the human body and optically sense human positions and/or orientations.  Ex. C at Abstract; 1:54-2:6.  For example, Figure 1 depicts a laptop with two cameras (100 and 101) pointed toward a work volume (170) to "determine the pointing direction vector 160 of the user's finger (for example pointing at an object displayed on screen 107), or the position and orientation of an object held by the user."  Ex. C at 2:39-58.  Alternatively, the embodiment may "determine gestures such as pinch or grip, and other examples of relative juxtaposition of objects with respect to each other[.]"  Ex. C at 2:58-60.

### D.   The '949 Patent

The '949 Patent is entitled "Camera Based Interaction and Instructions," and claims priority to U.S. Provisional Application No. 60/133,671 filed on May 11, 1999.  *See* Ex. D.  The '949 Patent is generally directed to using gestures in conjunction with digital imaging.  '949 Patent, Abstract.  The '949 Patent describes methods and apparatuses "to

enhance the quality and usefulness of picture taking for pleasure, commercial, or other business purposes." '949 Patent, 1:4-6. The claims of the '949 Patent relate in general to "detect[ing] a gesture" and performing functions in response to the detected gestures. Ex. D at Claims 1, 8, 13.

The'949 Patent describes improving the process of capturing images by analyzing a field of view and capturing an image when objects or gestures are detected. Ex. D at 1:50-2:8. The patent discloses numerous scenarios that cause an image to be captured when detected, such as: (1) when a "[s]ubject in a certain pose," (2) a "[s]ubject in a sequence of poses," (3) a "[p]ortion of [s]ubject in a sequence of poses (e.g., gestures)," (4) a "[s]ubject or portion(s) in a specific location or orientation," (5) a "[s]ubject in position relative to another object or person" such as a "bride and groom kissing in a wedding," and (6) "a subject undertak[ing] a particular signal comprising a position or gesture" such as "raising one's right hand." Ex. D at 5:30-49.

## III.    LEGAL STANDARD

GTP understands that the Court is well-aware of the legal standards for claim construction as established by *Markman*, *Phillips*, and their progeny. To the extent specific legal authority is required to support GTP' positions, it is provided in the appropriate section below.

## IV.    CLAIM CONSTRUCTION ARGUMENTS

### 1.    "adapted to"

| Asserted Claims | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| '079 Patent - 1, 11, 21<br><br>'924 Patent - 1, 3-5, 8, 10, 12, 14 | No construction necessary. | Plan and ordinary meaning, whichis "designed to" in the context of acamera or sensor and "programmed to" in the context ofa processor |

| '949 Patent - 1 and 13 | | |
|---|---|---|

Defendants in this case seek the same constructions of the term "adapted to" that were rejected in the Eastern District.[2]  Those constructions were rejected because the term "adapted to," which is recited in several of the Asserted Patents, is well-understood and does not require construction.   Defendants seek to construe "adapted to" differently depending on the claim term with which it is associated.  That is improper.  "Adapted to" should be given the same meaning across all claims.  Additionally, "adapted to" does not mean "programmed to" or "designed to," and Defendants can find no support for such a construction.  *See Profectus Tech. LLC v. Huawei Techs. Co., Ltd.*, No. 6:11-cv-474, 2014 U.S. Dist. LEXIS 53157, at *29 (E.D. Tex. Apr. 16, 2014) (Schneider, J.) (citing *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1322-23 (Fed. Cir. 2003)) ("'[A]dapted to' is not ambiguous . . . and no further construction is needed.").   Therefore, Defendants' proposed construction should be rejected.

2. **"at least one of … and …"**

| Asserted Claims | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| '079 Patent - 5, 21, 25, 28<br><br>'924 Patent - 1, 6, 7, and 8<br><br>'949 Patent - 7 | No construction necessary. | "at least one of __ and at least one of __" |

---

[2] Judge Gilstrap in the Eastern District of Texas rejected these same constructions because "'programmed to' and 'designed to' are unnecessary and would tend to confuse rather than clarify the claims for the finder of fact."  *Gesture Tech. Partners, LLC v. Huawei Device Co. et al*, No. 2:21-CV-40-JRG, 2021 U.S. Dist. LEXIS 195721, at *84 (E.D. Tex. Oct. 12, 2021).

The term "at least one of … and …" is clear on its face and does not require construction. When a claim term or phrase is readily comprehensible to the finder of fact, the term or phrase requires no construction. *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). This term appears in several claims, including, for example, claim 5 of the '079 Patent, which is reproduced below:

> "The method according to claim 1 wherein the detected gesture includes <u>at least one of</u> a pinch gesture, a pointing gesture, <u>and</u> a grip gesture."

Ex. C at Cl. 5 (emphasis added). Defendants' proposed construction is "over limiting and rewrites the claim" by requiring all three gestures to be present, thereby reading out "at least one of" from the claim. *See U.S. Ethernet Innovations, LLC v. Ricoh Ams. Corp.*, No. 6:12-cv-00235-MHS-JDL, 2013 U.S. Dist. LEXIS 117421, at *27 (E.D. Tex. Aug. 20, 2013) (Love, J.). As used in the context of the asserted claims, the term "at least one of . . . and . . ." is disjunctive. Courts have repeatedly interpreted the claim language at issue in this case – "and" in the phrase "at least one of (a) and (b)" – as disjunctive, i.e. to mean "and/or." *See Iridescent Networks, Inc. v. AT&T Mobility, LLC*, 2017 U.S. Dist. LEXIS 111107, *19 (E.D. Tex. July 18, 2017) (Love, J.) (order and recommendation adopted by *Iridescent Networks, Inc. v. AT&T Mobility, LLC*, No. 6:16-CV-01003, 2017 U.S. Dist. LEXIS 223385, at *20 (E.D. Tex. Nov. 30, 2017)) (construing "at least one of a requested amount of bandwidth and a codec" to mean "includes a requested amount of bandwidth, or a codec, or both"); *Orion IP, LLC v. Staples, Inc.*, 406 F. Supp. 2d 717, 726 (E.D. Tex. December 15, 2005) (Davis, J.) ("Thus the Court agrees with Orion that 'and,' in context, is used in the disjunctive."); *NFC Tech., LLC v. Samsung Elecs. Co.*, 2016 U.S. Dist. LEXIS 56777, *46 (E.D. Tex. April 28, 2016) (Payne, J.) (construing one of a bit and a flag to mean a bit or a flag); *3rd Eye Surveillance, LLC v. United States*, 140 Fed. Cl. 39,

70 (2018) (construing "at least one of the additional information and the imagery data" as disjunctive, meaning "one or more additional information, one or more imagery data, or one or more of both").  That is the case here.

There is no basis to depart from the plain language of the claim.  As such, Defendant's proposed construction should be rejected.

### 3.    "a computer implemented method" / "a computer apparatus"

| Asserted Claims | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| '079 Patent - 1, 11, 21 | No construction necessary. | "a method implemented on a laptop or desktop computer" (limiting preamble) / "a laptop or desktop computer" (limiting preamble) |

GTP does not contest that the preamble of the asserted claims in the '079 Patent is limiting.  Defendants' constructions for these terms, however, are a blatant attempt to use Apple's non-infringement position improperly to interpret the claims, improperly limiting the term "computer" to "a laptop or desktop computer."  Defendants seek to rewrite the plain meaning of this term without showing disclaimer or lexicography.  *See Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1365 ("To act as its own lexicographer, a patentee must 'clearly set forth a definition of the disputed claim term' other than its plain and ordinary meaning."), 1366 ("The standard for disavowal of claim scope is similarly exacting.") (Fed. Cir. 2012).  The intrinsic record contains no disclaimer or lexicography that would limit the scope of the word "computer" to "a laptop or desktop computer" as Defendants propose.

Defendants' construction is improper for the additional reason that it excludes embodiments disclosed in the specification.  *See Sandisk Corp. v. Memorex Prods.*, 415 F.3d 1278, 1285 (Fed. Cir. 2005) ("A claim construction that excludes a preferred

embodiment, moreover, 'is rarely, if ever, correct.'").   Figure 6, of the '079 Patent

expressly refers to a "handheld computer embodiment."  Ex. C, Fig. 6; 3:59-61 ("This is

useful for those applications where the keyboard of conventional style is too big (e.g., the

**hand held computer of FIG. 6**).") (emphasis added); 9:25-10:49 (describing the handheld

device embodiment).  Accordingly, Defendants' proposed construction should be denied.

> **4.**   **"computer means within said housing for analyzing said image to determine information concerning a position or movement of said object"**

| Asserted Claims | Plaintiff's Proposal | Defendants' Proposal |
| --- | --- | --- |
| '431 Patent - 7 | No construction necessary. Not governed by 35 U.S.C. § 112 ¶ 6. | Governed by 35 U.S.C. § 112 ¶ 6.<br><br>**Function:** "analyzing said image to determine information concerning a position or movement of said object"<br><br>**Structure:**   A computer programmed to (1) scan the pixel elements in a matrix array on which said image is formed, and then calculate the centroid location "x,y" of a target on the object using the moment method disclosed in U.S. Patent No. 4,219,847 to Pinkney, as disclosed at 4:48-62; (2) add or subtract said image from prior images and identify movement blur, as disclosed at 6:64-7:14, 7:22-29; (3) obtain a time variant intensity change in said image from the detected output voltage from the signal conditioning of the camera means or by subtracting images and observing the difference   due   to   such |

| | | variation, as disclosed at 8:25-38; or (4) detect a change in color reflected from a diffractive, refractive, or interference based element on said object that reflects different colors during movement, as disclosed at 8:60-9:14 |
| --- | --- | --- |

The parties dispute whether this term is subject to 35 U.S.C. §112, ¶ 6. GTP contends that the word "computer" provides sufficient structure, so the term should not be construed under 112 ¶6. In the alternative, Defendants' positions on to the function and structure of the term are incorrect.

> ### a. The term "computer" connotes sufficient structure for the recited function.

This term does not require construction under 35 U.S.C. §112, ¶ 6 because "computer" is a well-known term that connotes specific structure to a person of ordinary skill in the art ("POSITA"). *See* Ex. E, Expert Declaration of Benedict Occhiogrosso in Support of Plaintiff's Opening Claim Construction Brief, at ¶ 34. The claimed function is "analyzing to determine." That is what computers do. They analyze data to determine things. Moreover, the surrounding claim language recites functionality that a POSITA would associate with a computer, namely analyzing and determining. The term "computer" recites sufficient structure to a POSITA for performing the recited function "analyzing said image to determine information concerning a position or movement of said object." Ex. E at ¶ 34; *see also Gesture Tech. Partners, LLC v. Huawei Device Co. et al*, No. 2:21-CV-40-JRG, 2021 U.S. Dist. LEXIS 195721, at *28 ("[A]lthough the term 'computer' may refer to a broad class of structures, this breadth does not necessarily render the term non-structural."); *accord Samsung Elecs. Am., Inc. v. Prisua Eng'g Corp.*, 948

F.3d 1342, 1354 (Fed. Cir. 2020) (finding the term "digital processing unit" served as a stand-in for a "general purpose computer" or a "central processing unit."). "Merely because a named element of a patent claim is followed by the word 'means,' . . . does not automatically make that element a 'means-plus-function' element under 35 U.S.C. § 112, ¶ 6." *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348 (Fed. Cir. 2015).  The presumption for or against the application of 35 U.S.C. §112, ¶ 6 "stands or falls according to whether one of ordinary skill in the art would understand the claim with the functional language, in the context of the entire specification, to denote sufficiently definite structure or acts for performing the function." *Ancora Techs., Inc. v. LG Elecs., Inc.,* No. 1-20-CV-00034-ADA, 2020 U.S. Dist. LEXIS 150002, at *8 (W.D. Tex. Aug. 19, 2020) (Albright, J.) (quoting *Masco Corp. v. United States*, 303 F.3d 1316, 1326 (Fed. Cir. 2002).  That is the case with this term.  A POSITA would understand that the recited function is "analyzing said image to determine information concerning a position or movement of said object" and would recognize a computer as sufficient structure.  Ex. E at ¶ 35-37; *see Gesture Tech. Partners, LLC v. Huawei Device Co. et al*, No. 2:21-CV-40-JRG, 2021 U.S. Dist. LEXIS 195721, at *29 (finding the presumption against means plus function rebutted).

> **b.  Alternatively, Defendants' recited function is improper, and their proposed corresponding structure includes structure that is not necessary to perform the recited function.**

If the Court finds that this term is subject to 35 U.S.C. §112, ¶ 6, GTP requests that the Court adopt GTP's recited function and corresponding structure for the following reasons.

-10-

       i.     <u>Defendants attempt to inject additional limitations into the claim language by expanding the recited function.</u>

Here again, Defendants seek to inject limitations into the recited function, this time in two different ways: (1) adding the phrase "positioned by a user operating said object" directly into the function, and (2) adding unclaimed functional limitations through their proposed structure. Defendants' proposed structure improperly attempts to define the structure through the addition of the following unclaimed functions: (1) scan the pixel elements in a matrix array on which said image is formed, and then calculate the centroid location "x,y" of a target on the object using the moment method; (2) add or subtract said image from prior images and identify movement blur; (3) obtain a time variant intensity change in said image from the detected output voltage from the signal conditioning of the camera means or by subtracting images and observing the difference due to such variation; or (4) detect a change in color reflected from a diffractive, refractive, or interference based element on said object that reflects different colors during movement." Defendants concede that the appropriate structure is a computer. But they then attempt to introduce new, functional elements to the claim through "programming" of the computer. That is improper. Importing limitations into the recited function should not occur absent a disclaimer. *See Grantley Patent Holdings, Ltd. v. Clear Channel Communs., Inc.*, Civil Action No. 9:06CV259, 2008 U.S. Dist. LEXIS 1588, at *25 (E.D. Tex. Jan. 8, 2008) (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) ( "[C]ourts should avoid importing limitations from the specification into the claim terms, absent a clear disclaimer of claim scope.). The function in the claim is "analyzing said image to determine information concerning a position or movement of an object," and nothing more. Ex. E at ¶ 35.

ii.     Defendants' proposed structure is neither clearly linked to
        nor necessary to perform the recited function.

The term "a computer" is the structure disclosed and clearly linked in the specification for performing the recited function.   For example, the '431 Patent specification describes "a combination of one or more TV cameras (or other suitable electro-optical sensors) and a computer to provide various position and orientation related functions of use." Ex. A at 11:55-58; Ex. E at ¶ 36.   The specification also clearly links the computer with the recited function:   "the computer connected to the camera analyzes the target images . . . determines the cell phone position and/or orientation . . . ." Ex. A at 12:47-50.   "Analyzing to determine" is an ordinary function of a computer.   Ex. E at ¶¶ 36-37; *See In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1316 (Fed. Cir. 2011) ("Absent a possible narrower construction of the terms 'processing,' 'receiving,' and 'storing,' . . . those functions can be achieved by any general purpose computer without special programming.   As such, it was not necessary to disclose more structure than the general purpose processor that performs those functions."); accord *Ergo Licensing, LLC v. CareFusion 303, Inc.,* 673 F.3d 1361, 1365 (Fed. Cir. 2012)  ("*In In re Katz*, we held that '[a]bsent a possible narrower construction' of the terms 'processing,' 'receiving,' and 'storing,' the disclosure of a general-purpose computer was sufficient. . . . In other words, a general-purpose computer is sufficient structure if the function of a term such as 'means for processing' requires no more than merely 'processing,' which any general-purpose computer may do without any special programming.").

Even if "analyzing to determine" somehow required more, the claims explain how the computer must be arranged:   it must be arranged to analyze an image and determine position or movement based on the image.   Thus, the claim language provides all the

structure needed.  Defendants' proposed structure is not "clearly linked or associated with the [recited] function" and incorporates "structure" beyond that necessary to perform the claim function.  Section 112, ¶6 does not permit such additions.  *See Micro Chem, Inc. v. Great Plains Chem. Co.*, 194 F.3d 1250, 1257 (Fed. Cir. 1999)(Section 112, ¶6 does not "permit incorporation of structure from the written description beyond that necessary to perform the claimed function.").  For example, scanning the pixel elements in a matrix array on which the image is formed pertains to capturing the image. *See* Ex. A at 4:48-62; Ex. E at ¶ 38.  Obtaining intensity signals based on the output voltage from the signal conditioning means of a camera pertains to image capture—not analyzing the image.  *See* Ex. A at 6:64-7:14, 7:22-29; Ex. E at ¶ 38.  Furthermore, Defendants' proposed structure goes beyond what is necessary to achieve the claimed function. *Micro Chemical, Inc*, 194 F.3d at 1258; *see also* Ex. E at ¶ 38.  Defendants' cited structure is not "necessary" to perform the recited function of analyzing said image to determine information.  *See* Ex. E at ¶ 38. Defendants' additional limitations address the types of data that <u>could be analyzed, they do not form the structure for analyzing the data</u>.  *see* Ex. E at ¶ 38.  That structure is the computer.

     5.    **"means for controlling a function of said apparatus using said information"**

| Asserted Claims | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| '431 Patent - 7 | **Function:** "controlling a function of a handheld computer apparatus using information concerning a position or movement of at least one object positioned by a user operating said object" | **Function:** "controlling a function of a handheld computer apparatus using information concerning a position or movement of at least one object positioned by a user operating said object" |

-13-

| | **Structure:** "a control system programmed to control a function based on information concerning a position or movement of said object; and equivalents thereof." | **Structure:** Indefinite. |
|---|---|---|

The Parties agree that this term is subject to 35 U.S.C. §112 ¶6, but disagree as to the recited function and corresponding structure.  Defendants, like the defendants in the previous Eastern District case, improperly seek to interject extraneous limitations into the recited function to render the term indefinite.  It is not.

### a. Defendants' recited function is improper.

Defendants propose that the recited function should be construed to include a series of extraneous limitations not recited in the claim, including "handheld computer" and "concerning a position or movement of said object positioned by a user operating said object."  That is improper.  *See Micro Chemical, Inc. v. Great Plains Chemical Co.*, 194 F.3d 1250, 1258 (Fed Cir. 1999) ("The statute [35 U.S.C. § 112 ¶ 6] does not permit limitation of a means-plus-function claim by adopting a function different from that explicitly recited in the claim.").  Defendants' extraneous limitations are "over limiting and rewrite[]the claim."  *U.S. Ethernet Innovations, LLC v. Ricoh Ams. Corp.*, No. 6:12-cv-00235-MHS-JDL, 2013 U.S. Dist. LEXIS 117421, at *27 (E.D. Tex. Aug. 20, 2013) (Love, J.).  As such, Defendants' recited function should be rejected.

### b. The "means for controlling" term is not indefinite.

The "means for controlling" term is not indefinite because the specification discloses structure for performing the recited function.  A POSITA would understand that the structure for this term is "a control system programmed to control a function based on information concerning a position or movement of said object; and equivalents thereof."

-14-

*See* Ex. E, ¶40.  The '431 Patent specification describes the invention in terms of camera capabilities and their effect on the ability to control different devices through a control system:

> Given the invention, the potential for target acquisition in a millisecond or two thus is achievable with simple pixel addressable CMOS cameras coming on stream now (today costing under $50), assuming the target points are easily identifiable from at least one of brightness (over a value), contrast (with respect to surroundings), color, color contrast, and more difficult, shape or pattern (e.g., a plaid, or herringbone portion of a shirt). ***This has major ramifications for the robustness of control systems built on such camera based acquisition, be they for controlling displays, or machines or whatever***.

Ex. A at 5:50-60; Ex. E at ¶40.  The '431 Patent describes a control system associated with a camera that may be used to control "displays, or machines or whatever."  *Id*.  This mirrors the claim language and recited function in claim 7:  the camera means and means for controlling are in the same handheld computer apparatus, so the control system is associated with the camera.  *See* Ex. A at Cl. 7; Ex. E at ¶40; *see also Gesture Tech. Partners, LLC v. Huawei Device Co. et al*, No. 2:21-CV-40-JRG, 2021 U.S. Dist. LEXIS 195721, at *23 ("Indeed, the claim language itself sets forth an algorithm when the disputed term is read in conjunction with the separately recited 'computer means' for analyzing said image to determine information concerning a position or movement of said object.  The claim expressly provides for using this information so as to control a function.").. Furthermore, the control system is used for controlling a function of that apparatus.  Ex. A at Cl. 7; Ex. E at ¶40.  Therefore, a POSITA would recognize "a control system programmed to control a function based on information concerning a position or movement of said object; and equivalents thereof" is the structure clearly linked with the claimed function.  Ex. E at ¶41; *see Telcordia Techs., Inc. v. Cisco Sys.*, 612 F.3d 1365, 1377 (Fed.

Cir. 2010) (citing *Intel Corp. v. VIA Techs.*, 319 F.3d 1357, 1365-66 (Fed. Cir. 2003) ("[C]laim definiteness depends on the skill level of an ordinary artisan. . . Therefore, the specification need only disclose adequate defining structure to render the bounds of the claim understandable to an ordinary artisan.")).

Defendants cannot meet their burden because a POSITA would understand the bounds of the disputed terms in light of the disclosed structure. *See* Ex. E at ¶¶39-41.

6. **"oriented to view [a user / an object other than the user]"**

| Asserted Claims | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| '924 Patent - 1 | No construction necessary. | Indefinite. |

Here again, Defendants appear to adopt already-rejected claim construction arguments. Defendants have not provided a specific reason for why they contend that the terms "oriented to view a user" and "oriented to view an object other than the user" are indefinite. But, given their approach with respect to other previously constructed terms, GTP understands that Defendants contend that these terms are indefinite under *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, for allegedly claiming both an apparatus and a method of use of that apparatus. *See IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1383-84 (Fed. Cir. 2005). That position was rejected in the Eastern District of Texas because these terms clearly refer to configuration of the recited cameras, not user action. *See Gesture Tech. Partners, LLC v. Huawei Device Co. et al*, No. 2:21-CV-40-JRG, 2021 U.S. Dist. LEXIS 195721, at *67 ("The disputed term relates to configuration of the recited first camera rather than, for example, any user action or any action performed by or on the camera.").

"Indefiniteness must be proven by clear and convincing evidence." *Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017).  To render the claim indefinite under *IPXL Holdings*, Defendants must show by clear and convincing evidence that the claim is ambiguous as to whether it requires capability or actual performance of the method.  *See Optimum Imaging Techs. LLC v. Canon Inc.*, No. 2:19-CV-00246-JRG, 2020 U.S. Dist. LEXIS 102126, at *79-80 (E.D. Tex. June 11, 2020).  Defendants cannot make that showing for either term.

> **a.    "oriented to view a user"**

Defendants assert that the term "oriented to view a user" is indefinite, presumably under *IPXL Holdings*, for supposedly claiming an apparatus and method of using the apparatus.  That is not the case.  *IPXL* applies when a claim "recites two separate statutory classes of invention, e.g., 'an apparatus and a method of using that apparatus,' . . ." *Smartphone Techs. LLC v. Research in Motion Corp.*, No. 6:10cv74 LED-JDL, 2012 U.S. Dist. LEXIS 108370, at *9 (E.D. Tex. Aug. 2, 2012) (Love, J.).  "Whether claim language is indefinite for improperly mixing claim forms depends on whether the language used is directed at user actions or system capabilities."  *Motion Games, LLC v. Nintendo Co.*, No. 6:12-cv-878-JDL, 2015 U.S. Dist. LEXIS 180229, at *12-13 (E.D. Tex. Jan. 16, 2015) (Love, J.) (citing *In re Katz*, 639 F.3d at 1318).  "The relevant inquiry is whether the claim as a whole provides reasonable certainty to one of ordinary skill in the art about the subject matter it covers."  *CryptoPeak Sols., LLC v. Lowe's Home Ctrs.*, No. 2:15-cv-1737-RWS-RSP, 2016 U.S. Dist. LEXIS 135666, at *15 (E.D. Tex. Sep. 9, 2016)  (Payne, J).  In analyzing the claim, the Court determines "whether the claim leaves the reader 'unclear whether infringement [] occurs when one creates a system that allows the user to [practice

the claimed method step], or whether infringement occurs when the user actually [practices the method step]." *Id.* (quoting *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005)).  As acknowledged by the Court, "the holding in IPXL is 'very limited.'" *Motion Games, LLC.*, 2015 U.S. Dist. LEXIS 180229, at *8 (citations omitted).

The context of Claim 1 makes clear that it is <u>not</u> claiming both an apparatus and method of use:

> 1. A **handheld device** comprising:
> a housing;
> a computer within the housing;
> **a first camera oriented to view a user of the handheld device** and
> having a first camera output; and
> a second camera oriented to view an object other than the user of the
> device and having a second camera output, wherein the first and
> second cameras include non-overlapping fields of view, and
> wherein the computer is adapted to perform a control function of the
> handheld device based on at least one of the first camera output and
> the second camera output.

Ex. B at Cl. 1 (emphasis added).  The preamble is clear:  Claim 1 is directed toward an **apparatus** (the "handheld device).  The disputed term is merely describing the direction in which the first camera is facing.  "[O]ne of ordinary skill would understand that Claim 1 is limited to an apparatus and any infringement occurs upon creation of the claimed system." *Smartphone Techs. LLC*, 2012 U.S. Dist. LEXIS 108370, at *25.  There is simply no basis for Defendants' assertion that this term is indefinite under *IPXL Holdings*.

For the claim to be indefinite, Defendants must prove by clear and convincing evidence that the claim term "when read in light of the specification delineating the patent, and the prosecution history, fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc.*, 572 U.S. at 901.  Defendants cannot meet that high burden.  As discussed, the claim term is part of the larger "first camera"

term.  It is the orientation of a claimed component, not a mixed method.  *See Gesture Tech. Partners, LLC v. Huawei Device Co. et al*, No. 2:21-CV-40-JRG, 2021 U.S. Dist. LEXIS 195721, at *67 ("The disputed term relates to configuration of the recited first camera rather than, for example, any user action or any action performed by or on the camera.").

### b.   "oriented to view an object other than the user"

For the same reasons discussed above with respect to "oriented to view a user," Defendants' assertion that this claim is indefinite, presumably under *IPXL*, is also wrong. The term "oriented to view an object other than the user" is merely describing the orientation of the second camera.  Ex. B at Claim 1.  Therefore, this term is not indefinite. *See Gesture Tech. Partners, LLC v. Huawei Device Co. et al*, No. 2:21-CV-40-JRG, 2021 U.S. Dist. LEXIS 195721, at *69.

### 7.   "the detected gesture is identified by the processing unit apart from a plurality of gestures"

| Asserted Claims | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| '949 Patent - 13 | No construction necessary. | Plain and ordinary meaning, wherein the plurality of gestures are identified by the processing unit. |

Here again, Defendants improperly attempt to rewrite unambiguous claim language to add new limitations to the claim that do not exist.  The pertinent portion of claim 13 of the '949 Patent is reproduced below:

a processing unit operatively coupled to the sensor and to the digital camera, <u>wherein the processing unit is adapted to</u>:

<u>detect a gesture</u> has been performed in the electro-optical sensor field of view based on an output of the electro-optical sensor, and

correlate the gesture detected by the sensor with an image capture function and subsequently capture an image using the digital camera, wherein <u>the detected gesture is identified by the processing unit apart from a plurality of gestures</u>.

Ex. D, 16:29-39.  The language of the claim is clear—the processing unit is adapted to detect and identify a gesture.  The sensor and digital camera may view a plurality of gestures, but the claim requires only that the processing unit be adapted to detect and identify one of the gestures amongst that plurality.  The claims do not require that the processing unit be adapted to detect and identify all gestures (i.e., the "plurality of gestures").  The claim language makes this distinction clear because it recites that "the detected gesture is identified by the processing unit **apart from a plurality of gestures.**" Ex. D at Cl. 13 (emphasis added).

Accordingly, Defendants' construction is improper and should be rejected.

8.    "forward facing [portion / light source]"

| Asserted Claims | Plaintiff's Proposal | Defendants' Proposal |
| --- | --- | --- |
| '949 Patent - 1, 5, 8, 13, 16 | No construction necessary. | Indefinite |

a.    "forward facing portion"

This is yet another instance of Defendants seeking an untenable construction that has been previously rejected.  The term "forward facing portion" is clear.  To prove indefiniteness, Defendants must prove by clear and convincing evidence that the claim term "when read in light of the specification delineating the patent, and the prosecution history, fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc.*, 572 U.S. at 901 (2014).  Like the defendants in *Gesture Tech. Partners, LLC v. Huawei Device Co.*, Defendants in this case cannot meet this high burden.  *See Gesture Tech. Partners, LLC v. Huawei Device Co. et al*, No. 2:21-CV-40-

JRG, 2021 U.S. Dist. LEXIS 195721, at *100 ("The Court therefore hereby expressly rejects Defendants' indefiniteness argument. . . .").

The claim term provides orientation for the first camera—it is not indefinite.  There is nothing indefinite about this term, which appears in Claims 1, 8, and 13.  Claim 1 introduces this term as "a device housing including *a forward facing portion, the forward facing portion of the device housing encompassing an electro-optical sensor* . . ."  Ex. D at Cl. 1.  Claims 8 states "providing a portable device including *a forward facing portion encompassing a digital camera and an electro-optical sensor*" and Claim 13 states "a device housing including a forward facing portion, the forwarding facing portion encompassing . . ." *Id.* at Cl. 8 and 13.  All three claims provide explicit antecedent bases for the term "forward facing portion" such that a POSITA would understand it.  Additionally, when read in light of the specification, a POSITA would understand that the term is referring to a certain side of the claimed apparatus.  Accordingly, Defendants cannot show by clear and convincing evidence that this term is indefinite.  *See Intel Corp.*, 319 F.3d at 1366 (Fed. Cir. 2003).

        **b.**        **"forward facing light source"**

As with the previous term, this is also clear and unambiguous.  This claim element appears in dependent Claims 5 and 13, which depend on independent Claims 1 and 8.  Claim 5 states, "The portable device of claim 1 further including *a forward facing light source*" while Claim 13 mirrors the language.  Ex. D at Cl. 5 and 13.  When read in light of the independent claims, this term is referring to a "forward facing light source" that is included in the "forward facing portion" of the claimed apparatus.  *See* Ex. D at Cl. 1 and 8.  As with the term "forward facing portion," Defendants have not shown by clear and

convincing evidence that this term is indefinite.[3]  *See Intel Corp.*, 319 F.3d at 1366 (Fed. Cir. 2003).

Dated:  November 30, 2021

Respectfully submitted,
By: */s/ Todd E. Landis*
Fred I. Williams
Texas State Bar No. 00794855
Michael Simons
Texas State Bar No. 24008042
WILLIAMS SIMONS & LANDIS PLLC
601 Congress Ave., Suite 600
Austin, TX 78701
Tel: 512-543-1354
fwilliams@wsltrial.com
msimons@wsltrial.com

Todd E. Landis
State Bar No. 24030226
WILLIAMS SIMONS & LANDIS PLLC
2633 McKinney Ave., Suite 130 #366
Dallas, TX 75204
Tel: 512-543-1357
tlandis@wsltrial.com

John Wittenzellner
Pennsylvania State Bar No. 308996
WILLIAMS SIMONS & LANDIS PLLC
1735 Market Street, Suite A #453
Philadelphia, PA 19103
Tel: 512-543-1373
johnw@wsltrial.com

*Attorneys for Plaintiff*
*Gesture Technology Partners, LLC.*

---

[3] The court also rejected this argument in *Gesture Tech. Partners, LLC v. Huawei Device Co.*, No. 2:21-CV-40-JRG, 2021 U.S. Dist. LEXIS 195721, at *101 ("For the same reasons set forth as to the term 'forward facing portion,' discussed above, the Court hereby expressly rejects Defendants' indefiniteness argument. . . .").

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on November 30, 2021, the undersigned caused a copy of the foregoing document to be served on all counsel of record, via the Court's CM/ECF system, pursuant to the Federal Rules of Civil Procedure.

By: */s/ Todd E. Landis*
Todd E. Landis